**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| VONETTA L. GARDNER, | ) | CASE NO. 3:20-CV-01332-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| v. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| ANDREW SAUL, | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | CARMEN E. HENDERSON |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Vonetta L. Gardner, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me under 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On November 20, 2017, Gardner applied for DIB, alleging a disability onset date of August 4, 2017. (ECF No. 13, PageID #: 228). The application was denied initially and upon reconsideration by the Ohio Division of Disability Determination (the "State Agency"), and Gardner requested a hearing before an administrative law judge ("ALJ"). (ECF No. 13, PageID #: 166). On April 23, 2019, an ALJ held a hearing, during which Gardner, represented by counsel, and an impartial vocational expert testified. (ECF No. 13, PageID #: 111). On May 2, 2019, the

ALJ issued a written decision finding that Gardner was not disabled. (ECF No. 13, PageID #: 104). The ALJ's decision became final on April 20, 2020, when the Appeals Council declined further review. (ECF No. 13, PageID #: 78).

On June 18, 2020, this appeal followed. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 17). Gardner asserts the following assignment of error:

> (1) [Whether the] ALJ's decision should be reversed because the ALJ failed to weigh, evaluate, consider, or even mention the opinions of the state agency psychologist. [Gardner asserts] this was not harmless error as the state agency psychologist provided opinions that were more restrictive than the ALJ's residual functional capacity.

(ECF No. 14, PageID #: 496).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Gardner's hearing:

> The claimant reported that she cannot work due to unexpected blood pressure drops when she walks around and episodes of dizziness (6F/3 and Testimony). The claimant testified that she often feels like she is about to "pass out" (Testimony). The claimant estimated that she cannot walk more than 10 minutes before her blood pressure drops. According to hearing testimony the claimant cannot stand more than 5 to 10 minutes at a time and can "barely" squat using her knees, though she is able to bend at the waist (Testimony). The claimant added that she cannot sit for more than 30 minutes before her back starts to hurt and she gets tired of sitting (Testimony).
>
> As for her daily activities, the claimant testified that she can only do tasks that can be performed in a seated position, such as cooking and washing dishes. She is unable to clean the floor, such as mopping or vacuuming or cleaning the bathroom (Testimony). The claimant related that she no longer is able to sew or do crafts, such as making picture frames (Testimony).

(ECF No. 13, PageID #: 99).

During the hearing, the ALJ asked the vocational expert to

> assume that a hypothetical individual of the Claimant's age, education, and work experience has a residual functional capacity for work at the light exertional level. Possible limitations of no climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; visual limitation to no jobs requiring more than occasional binocular vision; environmental limitation to avoid all exposure to hazards such as dangerous moving machinery and unprotected heights; work in low-stress jobs, defined as having occasional decision making required, occasional changes in the work setting with no strict production quotas; occasional interaction with the general public, coworkers, and supervisors.

(ECF No. 13, PageID #: 126). The vocational expert testified that, given all these factors, the individual would be able to perform the requirements of representative unskilled occupations at the light exertional level, as modified, such as:

| Job Title / DOT Code | Nationwide |
| --- | --- |
| Office Helper / 239.567-010 | 83,250 |
| Mailroom Clerk / 209.687-026 | 24,770 |
| Routing Clerk / 222.687-022 | 80,660 |

(ECF No. 13, PageID #: 103). In his evaluation at Step 5, the ALJ stated:

> Pursuant to SSR-004p, the [ALJ] has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the [ALJ] concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(ECF No. 13, PageID #: 103).

B. **Relevant Medical Evidence**[1]

The ALJ also summarized Gardner's mental health records and symptoms:

> As for her mental complaints, the claimant reports experiencing depression after she was no longer able to work. Dr. McKinney diagnosed the claimant with major depressive disorder. She observed the claimant had clear and logical thought processes, maintained adequate remote recall and short-term memory skills and her general level of intelligence appeared to fall grossly within normal limits. The claimant has never been psychiatrically hospitalized or sought mental health counselling (6F/4).
>
> [ ]. As indicated in her updated treatment notes, the claimant had Patient Health Questionnaire scores of zero that indicated no issues with depression (10F/3). There is no evidence of in-patient psychiatric hospitalizations, emergency room visits, residential services, counseling, extensive care management services, or other intensive forms of intervention. Her condition has remained stable and her doctors have made conservative treatment recommendations. Accordingly, the record does not demonstrate that she would not be able to perform work at a competitive level.

(ECF No. 13, PageID #: 101).

C. **Relevant Opinion Evidence**

   **1. Consulting Psychologist, Regina McKinney, Psy.D.**

Gardner was referred to Regina McKinney, Psy.D. by the State Agency for evaluation of the presence or absence of a mental disorder and for the evaluation of any resulting limitations in mental activities required to work. (ECF No. 13, PageID #: 435). On March 14, 2018, Dr. McKinney offered the diagnosis of "Major Depressive Disorder, Single Episode, Moderate," based on the examination findings that Gardner "appeared to be depressed and somewhat irritable" and

---

[1] Due to the limited scope of Gardner's issue on appeal, the Court finds the summary of the medical records sufficient here. This summary is not meant to be exhaustive. Additional facts are included in the analysis when necessary.

had a flat affect. (ECF No. 13, PageID #: 439). Regarding the functional assessment, Dr. McKinney opined that there was no evidence that Gardner would have significant limitations in the areas of understanding, carrying out, and remembering instructions. *Id.* Dr. McKinney also opined that "depressive symptomatology could contribute to a slowed work pace," and that "exposure to day-to-day work stress could lead to increased depressive symptomatology…" (ECF. No. 13, PageID #: 439–40). Finally, although "the claimant was cooperative during the evaluation" and "did not report ever having difficulty getting along well with coworkers and supervisors," Dr. McKinney found that it was "difficult to establish rapport." (ECF No. 13, PageID #: 440).

### 2. State Agency Psychologist Karen Terry, Ph.D.

Six days after Dr. McKinney's examination, on March 20, 2018, Gardner was assessed by State Agency psychologist, Karen Terry, Ph.D., to determine Gardner's mental residual functional capacity. Dr. Terry opined that Gardner had the following limitation for the 'B' criteria of the Listings: mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (ECF No. 13, PageID #: 148). Furthermore, Dr. Terry opined that "Claimant can adapt to infrequent changes in a relatively static work environment," can complete "short cycle work tasks that do not require adherence to strict time or production demands," and "retains the ability to interact on a minimal and superficial level with coworkers, supervisors and the general public." (ECF No. 13, PageID #: 154).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

5

> 3. The Claimant has the following severe impairments: vertiginous syndrome /vestibular system disorder (orthostatic hypotension) and major depressive disorder (20 CFR 404.1520(c)).
>
> 4. The Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: postural limitation of no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; visual limitation to no jobs requiring more than occasional binocular vision; environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights; work in low stress jobs, defined as having occasional decision making required; occasional changes in the work setting, with no strict production quotas; and occasional interaction with the general public, coworkers, and supervisors.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06CV1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th

7

Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Gardner raises one issue on appeal: that the ALJ failed to discuss the opinion of the State Agency psychologist and, specifically, that this omission was not harmless because the State Agency psychologist provided more restrictive limitations than the ALJ's residual functional capacity ("RFC"). (ECF No. 14, PageID #: 496). The Court will address whether the ALJ erred by omitting the State Agency opinion and whether the error was harmless.

> **1. The ALJ Failed to Evaluate the Opinion of State Agency Psychologist, Dr. Karen Terry, Ph.D.**

Gardner asserts that the ALJ failed to evaluate the opinion of the State Agency psychologist[2] within his decision. (ECF No. 14, PageID #: 501). In response, the Commissioner agrees that "[t]he ALJ should have discussed the opinion offered by state agency reviewing psychologist, Dr. Terry, at the reconsideration state of state agency assessment. 20 C.F.R. § 404.1520c." (ECF No. 17, PageID #: 517). After review of the ALJ's decision, the Court agrees with both Gardner and the Commissioner—the ALJ failed to discuss the opinion of State Agency psychologist, Karen Terry, Ph.D. (ECF No. 13, PageID #: 94–103). The ALJ does not mention Dr. Terry by name or by title and the ALJ does not cite to Dr. Terry's assessment. *Id.* Therefore, there is no indication in the ALJ's decision as a whole that the ALJ considered the opinion of Dr. Terry.

> **2. The ALJ's Omission of Any Discussion of Dr. Terry's Opinion is a Violation of 20 C.F.R. § 1520(e)**

---

[2] Although Gardner refers to opinions of State Agency "psychologists" within her support brief (ECF No. 14, PageID #: 501), only one State Agency psychologist opined on Gardner's case. (ECF No. 13, PageID #: 153–54).

Prior to Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). *See also Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) ("SSR 96-8p provides, 'the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'"). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a).

Here, there is no indication that the ALJ considered the State Agency psychologist's opinion and as a result, the ALJ violated 20 C.F.R. § 404.1520(e)[3]. An ALJ's failure to consider a medical opinion or explain its omission requires remand because it prevents the Court from performing a meaningful review to determine whether substantial evidence supports the ALJ's decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5

---

[3] Gardner also asserts the ALJ violated 20 C.F.R. § 404.1520c by not evaluating the State Agency psychologist's opinion for consistency and support. (ECF No. 14, PageID #: 502). Since consistency and supportability are the most important factors to consider, the ALJ is required to explain how he assessed them in the medical source opinions. 20 C.F.R. § 404.1520c(b)(2). The Court has determined that the ALJ does not mention the opinion at all within his discussion. It follows, therefore, that the ALJ failed to discuss the consistency and support of the opinion. As a result, the Court does not address this violation separately.

9

U.S.C. § 557(c)(3)(A)) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'"). "When an ALJ fails to make a determination and necessary finding of fact in a sequential step, a reviewing court should not fill that gap." *Harvey v. Comm'r of Soc. Sec.*, 2017 WL 4216585, at *7 (6th Cir. Mar. 6, 2017) (internal quotations omitted). The ALJ is responsible for "build[ing] an accurate and logical bridge between the evidence and his conclusion" so that the Court can conduct a meaningful review. *Snyder v. Comm'r of Soc. Sec.*, No. 5:13CV2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014) (quoting *Woodall v. Colvin*, No. 5:12CV1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013)) "'Because the ALJ's decision does not permit [the] reviewing court to follow the reasoning and treatment of' [Dr. Terry's] opinion, [the Court] must vacate the Commissioner's decision and remand for further proceedings." *Davidson v. Comm'r of Soc. Sec.*, No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) (quoting *Davis v. Comm'r of Soc. Sec.*, 1:16CV2446, 2018 WL 1377790, at *10 (N.D. Ohio Mar. 19, 2018)).

### 3. The ALJ's Error is Not Harmless because Dr. Terry Opined More Restrictive Limitations than the ALJ Accounted for in the RFC

The Code of Federal Regulations explains that "[n]o error in either the admission or the exclusion of evidence… by the ALJ… is grounds for vacating, modifying or otherwise disturbing an otherwise appropriate ruling…" 20 C.F.R. § 498.224. "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F. 3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F. 3d 742, 746 (6th Cir. 2007)). In this case, correction of such

an error is not merely a formality as the possible exclusion of the limitation might have affected the outcome and therefore, the error is not harmless and remand is appropriate.

Gardner argues that the ALJ's error requires remand since the State Agency psychologist opined limitations that were more restrictive than the ALJ's residual functional capacity. (ECF No 14, PageID #: 496). Specifically, Gardner argues that the ALJ's decision did not account for the following limitations: (1) "short cycle work tasks that did not require adherence to strict time or production demands," (2) "an environment with infrequent changes in a relatively static work environment," and (3) "minimal and superficial interaction with others." (ECF No. 14, PageID #: 499). Gardner claims that within the RFC, the ALJ does not address the opined limitation to *superficial* interaction. (ECF No. 13, PageID #:99). Nor does the ALJ explain why he omitted that limitation from the RFC. (ECF No. 13, PageID #: 102).

In response, the Commissioner argues that the ALJ's error is harmless because "the [RFC] and jobs relied on to find [Gardner] not disabled at step five accommodated all mental limitations reflected in the evidence." (ECF No. 17, PageID #: 517). The Court finds that this argument fails to recognize that, in this case, the ALJ's error in failing to consider all of the opined medical evidence carries through to the VE's testimony at Step Five. Here, the hypothetical individual presented to the VE was analogous to the ALJ's determination of the RFC, which the ALJ reached without considering all of the required medical evidence. (ECF No. 13, PageID #: 126). As a result, the jobs that the VE found to exist in the national economy may not be appropriate when considering the additional limitations opined by Dr. Terry.

The Commissioner also claims that because Dr. McKinney was the "only medical provider to discuss or examine [Gardner's] mental functioning at length," Dr. McKinney was the "sole

basis for Dr. Terry's opinion." (ECF No. 17, PageID #: 518). Since the "ALJ omitted discussion of Dr. Terry's derivative opinion" (ECF No. 17, PageID #: 518) and instead referenced Dr. McKinney's first-hand observations within the RFC determination (ECF No. 13, PageID #: 97–98, 101), the Commissioner argues that the omission is harmless. (ECF No. 17, PageID #: 518).

Here, Dr. Terry's determination occurred at the reconsideration level[4] (ECF No. 13, PageID #: 143), six days after the consulting examination performed by Dr. McKinney. (ECF No. 13, PageID #: 435). In events where both a State Agency psychological consultant and a State Agency disability examiner perform an assessment, the disability determinations will be made by "a State agency [ ] psychological consultant *and* a State agency disability examiner." 20 C.F.R. § 404.1615(c)(1) (emphasis added). If the disability examiner was required to agree with the opinion of the psychological consultant, then there would not be a reason to include the disability examiner in the determination. The inclusion of the disability examiner in addition to the consultant implies that the disability examiner is permitted to opine differently than the consultant[5]. As a result, the two reports, Dr. Terry's and Dr. McKinney's, are independent. (ECF No. 13, PageID #: 153–55, 435–40). For example, Dr. McKinney did not include the term

---

[4] Dr. Terry's mental residual functional capacity ("MRFC") assessment occurs during the reconsideration level for disability determination. (ECF No. 13, PageID: 143, 153–55). However, there was not a State Agency MRFC at the initial level and Dr. Terry was the only State Agency psychologist to provide such an opinion. In either case, at the initial or reconsideration level, the State Agency disability examiner, together with the State Agency psychological consultant, would make the determination. 20 C.F.R. § 404.1615(c)(1).

[5] A disability examiner's independent review is further supported by 20 C.F.R. § 404.1615(c)(2) and 20 C.F.R. § 404.1615(c)(2), where the disability examiner "alone" is able to make the disability determination. There are particular situations when these regulations apply. *Id. See also* 20 C.F.R. § 404.1518; 20 C.F.R. § 404.1619. This case is not one of the enumerated exceptions.

*superficial* within her report. (ECF No.13, PageID #: 435–40). On the other hand, Dr. Terry did. (ECF No. 13, PageID #: 153–55).

As Gardner argues, the RFC does not include the three additional limitations contained in Dr. Terry's opinion, including a limitation that Gardner have only minimal and superficial interaction with others. (ECF No. 14, PageID #: 499). In defense of omitting *superficial* from the limitations, the Commissioner argues that "[o]ther courts across the United States have affirmed ALJ decisions in which medical opinions using the term 'superficial' were incorporated into the [RFC] finding using the term 'occasional.'" (ECF No. 17, PageID #: 519). Here, the ALJ determined that Gardner has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except: … work in low stress jobs, defined as having occasional decision making required; occasional changes in the work setting, with no strict production quotas; and occasional interaction with the general public, coworkers, and supervisors.

(ECF No. 13, PageID #: 99). Case law from this District demonstrates that "the terms 'occasional' and 'superficial' are not interchangeable." *Holmes v. Saul*, No. 5:19CV2556, 2020 WL 6747750, at *11 (N.D. Ohio Oct. 26, 2020). The term *occasional* only accounts for the quantity (or frequency) of a social interaction, whereas *superficial* accounts for the quality of the interaction. *See Kearns v. Comm'r of Soc. Sec.*, No. 3:19CV01243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) (stating that the Court disagrees that an occasional interaction, which is a quantitative limitation, accounts for a limitation to superficial interaction, which is a qualitative limitation). By not addressing the opined limitation to *superficial* interaction within the RFC, (ECF No. 13, PageID #: 94–103), the ALJ did not account for all opined limitations. Additionally, as discussed above, the ALJ does not explain why he omitted the limitation from the RFC. *Id.* Because the ALJ

13

omitted any mention of Dr. Terry's opinion, the ALJ did not build a logical bridge regarding his determination. (ECF No. 13, PageID #: 102). "[W]ithout meaningful explanation from the ALJ, the court is left to speculate whether the limitation was found to be credible or whether the RFC intended to accommodate that limitation." *Holmes v. Saul*, No. 5:19CV2556, 2020 WL 6747750, at *10 (N.D. Ohio Oct. 26, 2020). Ultimately, the Court is unable to discern whether consideration of the opined limitation would have affected the RFC and possibly the ALJ's disability determination. Therefore, the case must be remanded.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

DATED: 7/28/2021

    *Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).